UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIYARI RAHEEM HOGAN,
        Plaintiff,

v.                                          Case No.: 3:22cv1495/MCR/ZCB

MATTHEW RODEN, et al.,
        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

If a picture is worth a thousand words, then what is a video worth? In this *pro se* 42 U.S.C. § 1983 action, the answer is: dismissal. Defendants are two police officers who arrested Plaintiff for burglary. Plaintiff claims the officers violated the Fourth Amendment because they lacked probable cause to arrest him. Defendants say otherwise, and they have moved to dismiss (Doc. 37). Along with their motion, Defendants have provided body camera video footage. The video footage clearly shows that Defendants had probable cause to arrest Plaintiff. Thus, dismissal for failure to state a claim is warranted.

## I. What Plaintiff Says Happened

The events giving rise to this lawsuit began on June 14, 2021, when the Defuniak Springs Police Department received a report of a burglary in progress at 156 Cypress Lane. (Doc. 18 at 5). Defendants Matthew Roden and Chris Lewis were two of the officers who responded to the call. Once at the scene, Defendants arrested Plaintiff for burglary. Plaintiff alleges that Defendants lacked probable cause to conduct that arrest. (*Id.*).

According to Plaintiff's allegations, the home at 156 Cypress Lane belonged to his aunt, Cassandra Johnson. (*Id.*). And Plaintiff claims that his cousin, Kevica Jenkins, informed Defendants that she did not wish to press charges against Plaintiff. Plaintiff further alleges that he was living at 156 Cypress Lane and, therefore, he could not have burglarized it. (*Id.*). Nonetheless, Defendants arrested Plaintiff and booked him on a charge of burglary.

After bonding out of jail, Plaintiff spoke to Ms. Johnson, Ms. Jenkins, and Ms. Johnson's daughter, Tyler Johnson, who also lived at 156 Cypress Lane. (*Id.*). All three allegedly told Plaintiff they did not press charges, did not provide statements to the police, and did not

understand why the police arrested him. (*Id.*). Plaintiff claims that Defendants falsified their police reports by indicating that the owner of the residence wished to press charges. (*Id.* at 7-8).

Plaintiff also accuses Defendants of using a blank affidavit signed by Ms. Jenkins to pursue charges against him. (*Id.* at 7). Although not entirely clear, Plaintiff appears to accuse Defendant Roden of forging this affidavit. (*Id.*). According to Plaintiff, the "body camera will show all my allegations to be facts." (*Id.* at 6). Plaintiff alleges Defendants' conduct violated the Fourth Amendment. (*Id.* at 12). As relief, Plaintiff seeks monetary damages. (*Id.*).

## II.  What the Body Camera Video Shows Happened

In support of their motion to dismiss, Defendants have submitted video footage from Defendant Roden's body camera. (Doc. 36). Although Plaintiff has alleged that the "[b]ody camera will show all my allegations to be facts" (Doc. 18 at 6), the opposite is true. The body camera video footage tells a much different story than the one set forth in Plaintiff's amended complaint. Here is what the body camera video shows.

On the night of June 14, 2021, Defendant Roden responded to the report of a burglary in progress at 156 Cypress Lane. (Doc. 36; 10:59-

11:40).  Once at the home, Defendant Roden spoke with Kevica Jenkins, who stated she resided at the house.  Ms. Jenkins stated that house was owned by her aunt, Ms. Johnson.  Ms. Jenkins identified Plaintiff by name as Tiyari Hogan and stated the two were cousins.  Ms. Jenkins told Defendant Roden that Plaintiff had broken into the residence, kicked in a locked bedroom door, and was rummaging through dresser drawers. (*Id.* at 14:40-17:24).  Ms. Jenkins also told Defendant Roden that Plaintiff had fled the home and was likely hiding in the woods.  (*Id.* at 14:40-14:57, 15:30-16:00).

Defendant Roden and other officers, including Defendant Lewis, began searching for Plaintiff in the woods surrounding the home.  (*Id.* at 17:24-30:49).  Eventually, Defendant Lewis found Plaintiff hiding in an outbuilding.  (*Id.* at 30:20-31:11).  Plaintiff stated his name was Tiyari Hogan.  The officers handcuffed Plaintiff, informed him he was a burglary suspect, and read him his *Miranda* rights.  (*Id.* at 31:05-31:20).

After detaining Plaintiff, Defendant Roden returned to the house to speak further with Ms. Jenkins.  Ms. Jenkins showed Defendant Roden and another officer the bedroom door that Plaintiff had kicked in.  (*Id.* at 35:35-35:45).  She told Defendant Roden that upon arriving at 156

4

Cypress Lane, she noticed that the door to the house was open. (*Id.* at 35:55-36:15). This concerned her because nobody was supposed to be in the house at that time. (*Id.*). Ms. Jenkins entered the house and saw that Ms. Johnson's bedroom light was on. (*Id.* at 36:17-35). As she approached the room, she saw Plaintiff in Ms. Johnson's room rummaging through dresser drawers. (*Id.*). Plaintiff then threatened Ms. Jenkins—telling her "bitch, I will kill you." (*Id.* at 40:37; 46:39).

Ms. Jenkins stated that she then called the homeowner, Ms. Johnson, to ask if Plaintiff had permission to be in the house. Ms. Johnson stated that Plaintiff did not have permission. (*Id.* at 36:41-37:05). Ms. Jenkins confirmed to Defendant Roden that Plaintiff did not reside at the house and was not authorized to be inside. (*Id.* at 39:12-39:21).

Defendant Roden told Ms. Jenkins that he had probable cause to conclude that Plaintiff had committed a burglary. (*Id.* at 39:21-40:25). Ms. Jenkins agreed, stating "that's what he did." (*Id.* at 39:22-39:28). Defendant Roden gave Ms. Jenkins a written statement form and asked her to fill it out. (*Id.* at 43:40-44:06). Ms. Jenkins did not want to fill out the form, but she readily agreed that the information she had verbally

provided to the officers was true.  And she agreed to swear to her verbal statement (which was recorded on the body camera) in lieu of completing the written statement.  (*Id*. at 44:06-45:23).  She then swore—under penalty of perjury—that all the information she had orally provided to the officers was true.  (*Id*. at 46:07-46:11).  And she expressed her desire for charges to be filed against Plaintiff.  (*Id*. at 45:00-46:12).  Ms. Jenkins then signed the written statement form, which was blank.  (*Id*. at 45:50-46:05).  She was informed by the officers that they would write on the form that Ms. Jenkins' statement was recorded orally on the body camera.  (*Id*. *a*t 46:12-46:31).  During the discussion, Ms. Jenkins told Defendants to "take [Plaintiff] to jail."  (*Id*. at 57:00-57:15).  And she expressed her belief that Plaintiff was under the influence of drugs.  (*Id*. at 46:49).  Ms. Jenkins also stated that she was scared of Plaintiff.  (*Id*. at 39:27).

After the officers spoke with Ms. Jenkins, another individual, Tyler Johnson, arrived on the scene.  (*Id*. at 57:35-58:45).  Tyler Johnson stated that her mother owned the house and she regularly stayed there as well.  (*Id*. at 58:50-59:41).  Tyler Johnson confirmed that Plaintiff did not reside at the residence, and Tyler spoke with her mother on the phone in the

6

presence of the officers. (*Id.*). Her mother—the homeowner, Cassandra Johnson—confirmed that Plaintiff was not authorized to be inside the residence. (*Id.* at 58:50-59:41). Ms. Cassandra Johnson told Defendants that Plaintiff should be arrested for his conduct. (*Id.* at 59:18).

### III. Motion to Dismiss Standard

Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

At the motion to dismiss stage, the plaintiff's allegations are taken as true and construed in the light most favorable to the plaintiff. *Chabad*

7

*Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022). Additionally, a *pro se* litigant's complaint must be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## IV. Discussion

### A. The Court may consider the body camera video when ruling on Defendants' motion to dismiss.

The Eleventh Circuit has held that under the incorporation by reference doctrine, a district court may consider a police officer's body camera video when ruling on a motion to dismiss without converting the motion into one for summary judgment. *Baker v. City of Madison*, 67 F.4th 1268, 1276-78 (11th Cir. 2023). The situation in *Baker* is indistinguishable from the situation before the Court today. The plaintiff there sued police officers for excessive force. In his complaint, the plaintiff mentioned that there was a body camera video that "display[ed] what happened." *Id*. at 1275. The officers moved to dismiss for failure to state a claim, and they submitted the body camera video in support of that motion. *Id*. The district court granted the motion to dismiss, relying heavily on the body camera video. *Id*.

The Eleventh Circuit affirmed, explaining that under the "incorporation-by-reference doctrine" the district court "properly

8

considered the body camera footage . . . when ruling on the motions to dismiss." *Id.* at 1277. In reaching that conclusion, the *Baker* court explained that (1) the plaintiff mentioned the body camera video in his complaint several times; (2) the body camera video "depicts the events that are central to" the plaintiff's claim; and (3) there was no challenge to the authenticity of the body camera video footage. *Id.*

Here, as in *Baker*, Plaintiff's complaint makes several references to the body camera video. Specifically, in the complaint, Plaintiff mentions that Defendant Roden was wearing a body camera. (Doc. 18 at 6). The complaint further states that the "body camera footage will show" that Plaintiff's version of events is true. (*Id.* at 7). Elsewhere, the complaint asserts that the "body camera will show all [of Plaintiff's] allegations to be facts." (*Id.*). And the complaint repeatedly references things that Plaintiff says are or are not shown on the body camera footage. (*Id.* at 9). (stating that "the body camera footage do [sic] not show Kevica giving [her contact information] to the officers"); (*Id.* at 10) (stating that an officer "forged the criminal complaint by writing see body camera"). Also, as in *Baker*, the "body camera footage depicts the events that are central" to Plaintiff's claims. *See Baker*, 67 F.4th at 1272-73. The footage includes

"both audio and video, is clear and easy to follow, and shows all [Defendants'] relevant conduct." *Id.* Additionally, "[t]here are no allegations or indications that the footage has been altered in any way, nor any contention that what the footage depicts differs from what actually happened." *Id.* at 1277.

Because the requirements of incorporation by reference as set forth in *Baker* are met here, the Court will consider the body camera video when ruling on Defendants' motion to dismiss. As explained below, the body camera video contradicts Plaintiff's version of events and clearly shows that probable cause existed to arrest Plaintiff.

## B. Plaintiff has failed to state a plausible Fourth Amendment claim

In the amended complaint, Plaintiff alleges that Defendants violated the Fourth Amendment by falsely arresting him without probable cause. The presence of probable cause bars a false arrest claim. *Davis v. City of Apopka*, 78 F.4th 1326, 1333 (11th Cir. 2023). "Probable cause is not a high bar." *Id.* at 1334 (cleaned up). It "exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish a probability or substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 899

(11th Cir. 2022) (cleaned up).  And it "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence." *Davis,* 78 F.4th at 1334 (cleaned up).  Put another way, "[p]robable cause defines a radically different standard than 'beyond a reasonable doubt,' and while an arrest must stand on more than suspicion, the arresting officer need not have in hand sufficient evidence to obtain a conviction." *Von Stein v. Brescher*, 904 F.2d 572, 578 n.9 (11th Cir. 1990).  Probable cause does not require a law enforcement officer "to resolve every inconsistency found in the evidence," which reflects an understanding that "on-the-scene officers are often hampered by incomplete information and forced to make a split-second decision between action and inaction." *Davis*, 78 F.4th at 1335 (cleaned up).

A review of the body camera video in this case makes clear that Defendants had ample probable cause to arrest Plaintiff for burglary.[1] The video shows that Ms. Jenkins—who resided at the house—informed

---

[1] Burglary, under Florida law, is the entering of a dwelling "with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter."  Fla. Stat. § 810.02(1)(b)(1).

Defendants that Plaintiff had impermissibly entered the house, kicked down an interior door, was rummaging around in dresser drawers, and threatened to kill her. Additionally, the owner of the house (Ms. Johnson) confirmed via telephone to Defendants that Plaintiff was not authorized to be in the home and should "be arrested." (Doc. 36; 59:18). The owner's daughter, Tyler Johnson, also confirmed that Plaintiff did not live at the house. Although Ms. Jenkins initially was hesitant to press charges because of her familial relationship with Plaintiff, the video shows that she later changed her mind and stated her desire for Plaintiff to go to jail. (*Id.* at 45:00-45:11). She also agreed with Defendants that Plaintiff had committed a burglary. (*Id.* at 39:22-39:28). The body camera video shows that Defendants corroborated Ms. Jenkins' report by examining the interior of the house and noticing that a door had been damaged—just as Ms. Jenkins said it was. Plaintiff's own actions further supported Defendants' determination that there was probable cause to believe he committed a crime—he fled the scene and was found hiding in an outbuilding. *See generally United States v. Jacquillon*, 469 F.2d 380, 385

(5th Cir. 1972)² (stating that flight "is a fact to be considered" when assessing whether officers had probable cause for an arrest).

Defendants did not err in relying on the statements of Ms. Jenkins (as well as those of the homeowner and Tyler Johnson) to develop probable cause to believe Plaintiff committed burglary. The law is well settled that "an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998); *see also Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1290 (S.D. Fla. 2012) ("[P]olice officers may generally rely on a victim's statement to support probable cause absent allegations indicating that their reliance was unreasonable.") (cleaned up). There is nothing in the body camera video footage to suggest that Ms. Jenkins was not a reliable source of information. She exhibited a calm demeanor and clear answers to the officers' questions, and her explanation of events was consistent.

Plaintiff claims that Defendants ignored evidence favorable to him. But Plaintiff's statements to the police that he lived in the home did not

---

² Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *United States v. Brown*, 342 F.3d 1245, 1246 n.1 (11th Cir. 2003).

negate the evidence told to Defendants that established Plaintiff was not a resident of the house and had entered it illegally. And "when officers are making a probable cause determination they simply are not required to rule out a suspect's innocent explanation for suspicious facts." *Davis*, 78 F.4th at 1336. After all, "[i]t is not unusual to find at the scene of a crime evidence pointing in different directions, but a law enforcement officer is not required to resolve every inconsistency found in the evidence" before making an arrest. *Id*. at 1335. That means officers are "not required to forego arresting [a plaintiff] based on initially discovered facts showing probable cause simply because [the plaintiff] offered a different explanation." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990). Thus, Plaintiff's alternative explanation for his presence in the house did not preclude Defendants from having probable cause to arrest him.[3]

---

[3] Plaintiff has claimed that Defendants lied in their reports regarding Ms. Jenkins' decision to press charges. (Doc. 18 at 6). The body camera video footage plainly refutes that allegation. The footage shows Ms. Jenkins expressing her desire for charges to be filed against Plaintiff. (Doc. 36; 45:00-45:11). And it shows Ms. Jenkins telling Defendants "to take [Plaintiff] to jail." (*Id*. at 57:06). The video evidence also shows that Ms. Johnson, the homeowner, informed Defendants over the phone that Plaintiff "needs to be arrested." (*Id*. at 59:18). Plaintiff has also alleged that Defendants used a blank complaint form and forged Ms. Jenkins's

14

Based on the totality of the circumstances, a "reasonable officer could conclude that there was a substantial chance," *Washington*, 25 F.4th at 899 (cleaned up), that Plaintiff had burglarized the house at 156 Cypress Lane. Perhaps the evidence was insufficient to prove a burglary beyond a reasonable doubt at trial, but that is a far different question from whether there was sufficient evidence to satisfy the relatively low standard of probable cause to make an arrest. *See Davis*, 78 F.4th at 1335 (explaining that probable cause "necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial") (cleaned up).

Because the body camera video is "clear and obviously contradicts the plaintiff's alleged facts, [the Court] accept[s] the video's depiction

---

information on the form. (Doc. 18 at 9). The video clearly refutes that allegation. What the video shows is that Ms. Jenkins was willing to provide an oral statement to the officers under oath, but she did not want to write out her statement on the complaint form. (*Id.* at 44:31-46:11). So, Defendants had Ms. Jenkins sign a blank complaint form, and on that form, Defendants stated that the witness's statement was recorded using the body camera video instead of written down. (*Id.*) Plaintiff also says that Ms. Jenkins did not provide her identification to Defendants and they lied about that fact in their report. (Doc. 18 at 8). Again, the video tells a different story. In the video, Ms. Jenkins can be seen providing Defendants with her identification information (including a picture of her driver's license). (Doc 36; 48:10-18).

instead of the complaint's account, and view[s] the facts in the light depicted by the video." *Baker*, 67 F.4th at 1277-78 (cleaned up).    And what the body camera video shows is that Defendants had probable cause to arrest Plaintiff for burglary.  Plaintiff's allegations to the contrary are unsupported by the body camera video footage.  Accordingly, dismissal for failure to state a claim is warranted. *See id.* (affirming dismissal of civil rights claim against police officers for failure to state a claim where the body camera video clearly showed the plaintiff was not entitled to relief); *see also Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1220-21 (S.D. Fla. 2021) (dismissing civil rights case against police officers for failure to state a claim where the body camera video clearly established that officers had probable cause to arrest the plaintiff).

## V.  Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (Doc. 37) be **GRANTED**, Plaintiff's second amended complaint (Doc. 18) be **DISMISSED with prejudice for failure to state a claim**, and the Clerk of Court be directed to close this case.

At Pensacola, Florida this 22nd day of December 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.